<hr/>

(121 App. Div. 415.)

CENTRAL BANK OF WESTCHESTER COUNTY v. SHAW et al.

(Supreme Court, Appellate Division, Second Department. October 4, 1907.)

1. TOWNS—CLAIMS AGAINST TOWN—AUDITING BOARDS.

A town clerk having presented his claim against the town to the town auditors, who at a regular meeting by a resolution, entered upon the records, allowed the claim at a certain amount. The resolution came to the office of the town clerk, where it was open to the inspection of the inhabitants of the town. On the same day A., acting as town clerk, certified that his bill against the town for the amount named in the resolution was audited by the town auditors, and this certificate, containing the statement, "not good unless countersigned by," was signed by all the town auditors and delivered to the supervisor of the town, who wrote upon it "Accepted," and signed his name. Held, that this was a sufficient audit and allowance of claim under Town Law, Laws 1897, p. 663, c. 569, § 162, as amended by Laws 1906, p. 1393, c. 505, defining the duties of town boards in auditing accounts, and made applicable by Town Law, Laws 1890, p. 1236, c. 569, § 174, as amended by Laws 1896, p. 33, c. 85.

2. SAME—EFFECT OF ALLOWANCE BY AUDITING BOARD.

Where a board of town auditors empowered by Town Laws, Laws 1897, p. 663, c. 569, § 162, as amended by Laws 1906, p. 1393, c. 505, defining the duties of town boards in auditing accounts, and made applicable by Town Laws, Laws 1890, p. 1236, c. 569, § 174, as amended by Laws 1896, p. 33, c. 85, where town auditors perform the duties of town boards in auditing accounts, to audit and allow claims against the town, proceeding in substantial conformity with the statute, audited and allowed a claim, they cannot by subsequent action disallow it.

3. SAME.

Boards of town auditors, which derive their power solely from the statute, and whose members act in a semijudicial capacity, exhaust their authority under the statute and are without power to reconsider, revise, review, or annul their own judicial action after it has once been legally exercised.

Appeal from Westchester County Court.

Action by the Central Bank of Westchester County against James J. Shaw, the town of White Plains, and another to recover on a

claim against the town of White Plains. From a judgment for plaintiff, defendant the Town of White Plains appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, HOOKER, and RICH, JJ.

John M. Digney, for appellant.
Wilson Brown, Jr., for respondent.

HOOKER, J. The defendant Shaw was the town clerk of the town of White Plains, and, as such, had performed certain services for which he claimed he was entitled to the sum of $588 from the town. On the 17th day of November, 1904, he presented a bill for such services to the board of town auditors of the town, and on the 25th day of November, 1904, at a regular meeting of the board of town auditors, a resolution was passed unanimously, and entered upon the records of the proceedings of the board, in this language:

"Resolved that the bill of J. J. Shaw, Number 56, be allowed at the sum of $588; all voting in affirmative and allowed."

And this resolution was signed by all three members of the board. The resolution so reduced to writing and signed by the members of the town board, being part of the record of the meetings of the board, found its way into the office of the town clerk, and while there was, of course, open to the inspection of the inhabitants of the town. On or about the same day the defendant Shaw, acting as town clerk, made a certificate by which he certified that his bill against the town of White Plains for $588 was audited November 25, 1904, by the board of town auditors at the sum of $588. This certificate he signed. On that certificate appeared the statement, "Not good unless countersigned by," which was signed by all three of the town auditors. The defendant Thompson was then the supervisor of the town, and this certificate was evidently delivered to him, for he wrote on it, "Accepted November 25, 1904," and signed his name. On the 2d day of February, 1905, two members of the board of town auditors signed a certificate at the end of an abstract of accounts audited by the board of town auditors at their annual meeting November 17, 1904. The certificate, in effect, stated that they certified the foregoing to be an abstract of the names of all the persons who had presented accounts to be audited, the amounts claimed by each person, and the amount finally audited by the board of town auditors at their annual meeting, beginning November 17, 1904. In this abstract the account in question appears as follows:

"No. 56, bill of James J. Shaw, assigned to Central Bank, Westchester Co., services rendered, town clerk's services, claimed $588, disallowed."

This abstract, with the certificate, was delivered to the supervisor of the town. It does not appear that a duplicate of the abstract of accounts audited by the board of town auditors, to which was attached the certificate, was ever filed in the office of the town clerk. On the 25th day of November, 1904, the defendant Shaw assigned to the plaintiff his claim against the town of $588, for which the plaintiff paid him in cash the face of that claim, less a certain discount.

Section 162 of the town law (Laws 1897, p. 663, c. 569, as amended

by Laws 1906, p. 1393, c. 505) defines the duties of town boards in auditing accounts, and this section is made applicable by section 174 of the town law (Laws 1890, p. 1236, c. 569, as amended by Laws 1896, p. 33, c. 85), where town auditors have been elected and perform the duties of town boards in auditing accounts. The section reads:

"The meeting of the town board held on the Thursday preceding the annual meeting of the board of supervisors, shall be for the purpose of auditing accounts and allowing or rejecting all charges, claims and demands against the town. If any account is wholly rejected, the board shall make a certificate to that effect, signed by at least a majority of them, and file the same in the office of the town clerk. If the account is allowed, wholly or in part, the board shall make a certificate to that effect, signed by at least a majority of them, and if allowed only in part, they shall state in the certificate the items or parts of items allowed, and the items or parts of items rejected, and shall cause a duplicate of every certificate allowing an account, wholly or in part, to be made. One of which duplicates shall be delivered to the town clerk of the town, to be kept on file for the inspection of any of the inhabitants of the town; and the other shall be delivered to the supervisor of the town, to be by him laid before the board of supervisors of his county at their annual meeting. The board of supervisors shall cause to be levied and raised upon the town the amount specified in the certificate, in the same manner as they are directed to levy and raise other town charges."

The first question which should be determined is whether or not there had been a legal audit and allowance of Shaw's claim prior to the time he assigned to the plaintiff. That the members of the board of town auditors unanimously agreed that the claim should be allowed is not open to dispute, for the resolution signed by them is to that effect, but the statute requires that, if the account is allowed, the board shall make a certificate to that effect, and it shall cause a duplicate of every certificate to be made, one to be delivered to the town clerk, to be kept on file for the inspection of the inhabitants of the town, and the other to be delivered to the supervisor of the town, to be by him laid before the board of supervisors at their annual meeting. I think that the resolution signed by the town auditors may be construed to be a certificate by them to the effect that the account was allowed. The statute does not prescribe the form which such certificate must assume, and the resolution complies with all that is ordinarily taken to be understood by the term. It was to the point and unequivocal that Shaw's bill be allowed, the amount of the allowance was named at $588, and the result of the vote was given, all voting in the affirmative. If more were needed, it is to be found in the reference to the bill contained in the certificate, namely, No. 56, and bill No. 56 was filed, and specified distinctly what the services were for. The certificate was also filed with the town clerk because it became a part of the record of the proceedings of the board of town auditors, which record belonged in the town clerk's office, and was certainly open to the inspection of any inhabitant of the town. I think, too, that the certificate made by Shaw himself, dated November 25, 1904, may be construed to be the certificate of the town auditor; for the certificate was full and explicit, containing the name of the claimant, the amount claimed, the fact that the claim was audited, the day on which this was done, the persons by whom it was done, and the

amount which was finally allowed. The town auditors themselves, by subscribing to the words, "not good unless countersigned by," in effect adopted the language of Shaw's certificate; and this, then, may be construed to be the duplicate certificate which the statute requires that the town board shall make. It was delivered to the supervisor of the town as required by the statute, for it is marked by him with his signature, "Accepted November 25, 1904." What he may have done with it, or that he may not have delivered it to the board of supervisors, cannot affect the question of whether or not on November 25, 1904, there had been a valid and complete audit of Shaw's claim.

The act of the board of town auditors in allowing the claim is of a quasi judicial nature. Members of the board derive their powers solely from the statute, and may not proceed otherwise than in substantial conformity therewith. It gave them no power to disallow after having made a valid and complete allowance. The audit of the claim, its allowance, and the certificates become in effect the rendition of a judgment by the court of limited jurisdiction. This act was in its nature irrevocable and incapable of modification by the auditors themselves, and that it should be so held after the plaintiff had advanced money to Shaw on the faith of the audit is apparent. The general rule is that a special power conferred upon the officers affecting the interests and rights of others can be exercised but once. "When the officers or body upon whom the power is conferred have executed the power, the authority ceases, and the power becomes functus officio." People v. Stocking, 50 Barb. 573, 581. Boards which derive their power solely from the statute, and whose members act in a semijudicial capacity, exhaust their authority under the statute, and are without power to reconsider, revise, review, or annul their own judicial action after it has been once legally exercised. Jermaine v. Waggener, 1 Hill, 279; People ex rel. Thomson v. Board of Supervisors, 35 Barb. 408. In this case an actual audit on the 25th of November, 1904, was made by the board of auditors. The making, filing, and delivery of the certificates showing the result of the exercise of the semijudicial function of the auditors ended the matter as far as they were concerned, and they were without power to rescind their prior action. The certificate of February 2, 1905, signed by a majority of them, to the effect that Shaw's claim was disallowed, did not affect in any wise the liability of the town, which had already theretofore been passed upon in favor of the claimant and that liability fixed by the legal action of the auditors.

People ex rel. Smith v. Board of Town Auditors, 5 Hun, 647, is not at variance with the views we have expressed. In that case the appellant's claim was considered on November 7th, and audited by the board. Three days afterward the same members who voted to allow the claim voted to reduce it; and it was held that the resolution of the board allowing the claim at the reduced amount, together with its action in making and signing the certificate required by law, in which was included reference to the claims so reduced, was the final action of the board. It did not appear that the first audit resulted in

the making of the certificate which, as that case holds, concludes further consideration of the matter by the board.

The judgment must therefore be affirmed, with costs. All concur.